IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

**FRANCISCO ALTAMIRANO,**

      **Plaintiff,**

v.                                                                                      Case No.:  6:13-mc-00096

**CHEMICAL SAFETY AND HAZARD
INVESTIGATION BOARD,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Sanctions against nonparty, Bureau of Fiscal Service of the United States Department of the Treasury ("BFS"). (ECF No. 5). BFS has filed a response in opposition to the motion, and Plaintiff has filed a reply. (ECF Nos. 7, 8). Thus, the issues have been fully briefed and are ready for disposition. For the reasons that follow, the court **DENIES** Plaintiff's motion for sanctions.

### I.  Relevant Background

This motion arises from a deposition notice and subpoena served pursuant to Federal Rule of Civil Procedure 30(b)(6) and Rule 45, relating to a civil action pending in the United States District Court for the District of Colorado. In the underlying case, Plaintiff, Francisco Altamirano, alleges that Defendant wrongfully terminated his employment based upon age, race, and national origin. In response, Defendant claims that it terminated Mr. Altamirano's employment for several nondiscriminatory reasons,

1

including his improper use of a credit card issued for government travel only. Nonparty BFS is involved in the dispute to the extent that it administered certain aspects of Defendant's government-travel credit card program between January 2007 and November 16, 2009, the date on which Plaintiff's employment was terminated.

According to the record, Defendant's employees were issued credit cards by Citibank that were intended to be used only when the employees engaged in business-related travel for the Defendant. Under this program, the individual employees were responsible for paying the credit card charges to Citibank and would thereafter seek reimbursement from Defendant. On October 1, 2006, BFS began administering Defendant's travel card program, which included the task of notifying Defendant when one of its employees became significantly delinquent in paying his or her travel card balance. (ECF 7-3 at 75-76). BFS employee, Robyn Rice, was responsible for servicing Defendant's account under the general supervision of BFS employee, Pam Enlow. When Ms. Rice learned from Citibank that an employee of Defendant had a travel card balance more than thirty days past due, she was supposed to provide a delinquency report to Defendant. The record is clear that between January 1, 2007 and January 31, 2009, any delinquency reports provided by Ms. Rice to Defendant would have been sent via Ms. Rice's personal email account at BFS. (ECF No. 5 at 2-4). Pursuant to BFS's policy, Ms. Rice was required to copy Ms. Enlow on all delinquency communications to Defendant. (ECF No. 7 at 8-9). Beginning in February 2009, Ms. Rice switched to a BFS agency email account to distribute the delinquency reports. (ECF No. 5 at 3).

In March 2009, Ms. Rice sent two delinquency reports to Defendant. The reports indicated that Plaintiff, as well as several other employees, had past due balances on their travel card accounts. Based on these reports, Defendant initiated an investigation

into the specific charges made on Plaintiff's travel card. (ECF No. 7-2 at 107). In the course of its investigation, Defendant requested historical data from BFS and received a spreadsheet identifying all delinquent travel card accounts between January 2007 and February 2009. (ECF No. 7-2 at 134). The spreadsheet revealed several instances during that time frame when at least one of Defendant's employees had a significantly past-due travel card account, but BFS failed to send Defendant a corresponding delinquency report. With BFS's assistance, Defendant eventually confirmed that the two reports sent in March 2009 were the first delinquency reports provided by BFS to Defendant. (*Id.* at 134, 141-144). The spreadsheet and the delinquency reports were subsequently supplied to Plaintiff along with additional documents prepared during Defendant's investigation.

In April 2013, Plaintiff scheduled the deposition of a Rule 30(b)(6) witness from BFS to appear and testify at a location in Parkersburg, West Virginia and served a subpoena on BFS issued from the District Court in Colorado. Plaintiff indicated in the notice of deposition that he intended to inquire regarding:

> Communications that occurred between August 1, 2004 and November 16, 2009, between ... the Bureau of Public Debt of the U.S. Department of Treasury, now known as the Bureau of Fiscal Service of the U.S. Department of Treasury, and Defendant, concerning any of Defendant's employees' [government travel credit card] accounts that was or were past due, delinquent, terminated or suspended, or subject to suspension.[1]

In conversations between counsel for Plaintiff and counsel for BFS regarding the scope of the deposition, Plaintiff explained that three BFS employees, Pam Enlow, Robyn Rice, and Sue Burton, communicated with Defendant about its employees' delinquent accounts.[2] Accordingly, Plaintiff expected BFS to have its corporate representative

---

[1] See *Altamirano v. Chemical Safety and Hazard Investigation Board,* No. 11-cv-01728-PAB-MJW (D. Col0.) at ECF No. 52-7.

[2] *Id.* at ECF No. 52.

review the personal email accounts of the three women in order to prepare for the deposition. BFS objected to this request because two of the women, Ms. Rice and Ms. Burton, had retired and their email accounts had been placed on back-up tapes and were stored offsite. Counsel for BFS contended that restoring and reviewing the email accounts would involve over 200 hours of employee time at a cost of over $13,000. Despite the anticipated time and cost involved in the retrieval process, Plaintiff insisted that the corporate witness examine the email accounts prior to deposition. According to Plaintiff, the email accounts potentially contained evidence highly relevant to his claim that the reasons given for his termination were pretextual. When counsel could not agree, BFS filed a Motion to Quash and a Motion for Protective Order, arguing *inter alia*, that the scope of the deposition preparation, as required by Plaintiff, was unduly burdensome and onerous.[3] BFS agreed to offer Ms. Enlow as the corporate representative and agreed that she would review her own email account and the agency account, but sought an order quashing the subpoena or limiting it, so that Ms. Enlow would not be required to review the Rice and Burton email accounts. BFS also requested that the subpoena be quashed because the Colorado District Court did not have jurisdiction to compel a deposition in the Southern District of West Virginia.

On June 19, 2013, the Honorable Michael J. Watanabe, United States Magistrate Judge, issued an order granting BFS's Motion to Quash and Motion for Protective Order. (ECF No. 7-2). Judge Watanabe found that Plaintiff's demand for the archived emails was unduly burdensome; particularly, when considering that Plaintiff (1) had already received the requested information from Defendant and from nonparty

---

[3] *Altamirano v. Chemical Safety and Hazard Investigation Board,* No. 11-cv-01728-PAB-MJW (D. Col0.) at ECF No. 52.

Citibank, and (2) had failed to demonstrate that the additional materials were reasonably calculated to lead to the discovery of admissible evidence on the issue of pretext. (*Id.*). Plaintiff filed objections to the ruling, arguing that the Magistrate Judge was clearly erroneous in his overestimation of the burden to BFS because Plaintiff had agreed to forgo retrieval and review of Sue Burton's email account.[4] Plaintiff also argued that the ruling was contrary to law in that the Magistrate Judge misunderstood the duty on a government agency to prepare and produce a Rule 30(b)(6) witness. According to Plaintiff, the law is well-settled that a government agency must adequately prepare and produce a corporate representative for deposition when a valid notice and subpoena have issued. Thus, unless BFS could establish that Ms. Rice's email account was not "reasonably available," Plaintiff was entitled to depose a fully prepared Rule 30(b)(6) witness.

On August 12, 2013, the Honorable Philip A. Brimmer, United States District Judge, issued an order denying Plaintiff's objections to the Magistrate Judge's order; affirming in part and reversing in part the order; granting the motion to quash; and denying the motion for protective order as moot. (ECF No. 7-3). Judge Brimmer explained that prior to addressing the substantive merits of Plaintiff's objections, the Court had to consider its jurisdiction. Given that the subpoena commanded the appearance of a witness in West Virginia, the Colorado District Court did not have jurisdiction to modify or enforce the subpoena. Instead, under Federal Rule of Civil Procedure 45, only the appropriate District Court in West Virginia was authorized to issue such orders. Consequently, Judge Brimmer quashed the subpoena for lack of

---

[4] *Id.* at ECF No. 72. After Plaintiff learned that Sue Burton did not work on the accounts of individual employees, he agreed to withdraw his request for a review of her email account.

5

jurisdiction and, finding that the motion for protective order was ancillary to the quashed subpoena, denied the motion as moot. (*Id.*).

On September 11, 2013, Plaintiff served BFS with an Amended Notice of Deposition and a subpoena issued by the United States District Court for the Southern District of West Virginia commanding the appearance of a Rule 30(b)(6) designee of BFS to appear for testimony in Parkersburg, West Virginia on September 24, 2013. (ECF Nos. 5-1, 5-2). The deposition notice designated the same area of inquiry as set forth in the April 2013 notice. However, BFS did not file a Motion to Quash or a Motion for Protective Order, and the deposition proceeded as scheduled. Pam Enlow appeared as the corporate representative and testified for a period of three hours. During her testimony, Ms. Enlow indicated that she had reviewed her email account, the agency account, and other materials in preparation of her testimony, but did not retrieve, restore, and review the email account of Robyn Rice. (ECF No. 5-4 at 14, ECF No. 7 at 9). For that reason, Plaintiff now brings this motion for sanctions.

## II. **Positions of the Parties**

Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i) and Rule 37(a)(4). (ECF No. 5). Plaintiff argues that when BFS decided not to file a motion to quash or for protective order in this court, BFS became obligated to fully prepare Ms. Enlow by having her review all of the relevant email accounts, including Ms. Rice's personal account. In Plaintiff's view, Ms. Rice's email account, at least until she switched to the agency account in February 2009, potentially contains communications with Defendant identifying employees other than Plaintiff who had delinquent travel card accounts. Plaintiff complains that he incurred significant expense to have his lawyer prepare for the deposition, travel to West Virginia, and take the

6

deposition, only to learn of BFS's "conscious, deliberate choice not to adequately prepare Ms. Enlow" for her Rule 30(b)(6) testimony. (*Id.* at 5). Plaintiff seeks monetary sanctions in the amount of $6,651.25 to reimburse him for the expenses incurred in taking Ms. Enlow's deposition and for an order compelling BFS to restore the Rice email account; search the account for communications with Defendant; have its witness review the relevant emails; and produce her for a supplemental deposition.

In response, BFS makes multiple arguments. First, BFS asserts that it did retrieve and restore old emails belonging to Ms. Enlow. Because the time period relevant to the deposition was 2006 through 2009, the emails had been backed-up and stored offsite with other old emails and retired email accounts. After obtaining Ms. Enlow's old emails, BFS reviewed them and determined that Ms. Rice had followed BFS's internal policies by copying Ms. Enlow on all communications that Ms. Rice had with Defendant regarding delinquent accounts. Therefore, restoring Ms. Rice's emails was an unnecessary and costly task. (ECF No. 7 at 8). Second, BFS contends that testimony and other evidence from Defendant and Citibank substantiates that Plaintiff already has in his possession all communications regarding delinquent accounts sent by BFS to Defendant during the relevant time period. (*Id.* at 9). Moreover, BFS emphasizes that emails sent before March 2009 are irrelevant. Pointing to the decision of Magistrate Judge Watanabe, BFS argues that the record clearly establishes that the individuals who terminated Plaintiff's employment were not aware of any delinquent accounts before March 2009. Therefore, BFS was not obligated to retrieve and review Ms. Rice's personal email account, which at most would include delinquency communications sent before February 2009. Third, BFS argues that this court is not authorized to award sanctions under Rule 37(d) because only "the court where the action is pending" is

7

allowed to order sanctions under that Rule. (*Id.* at 17). Finally, BFS claims that sanctions should not be awarded in this case because the witness was adequately prepared, and the decision BFS made not to restore and review Ms. Rice's emails was substantially justified given the Magistrate Judge's ruling. (*Id.* at 15, 18).

### III. Discussion

Federal Rule of Civil Procedure 37 addresses orders to compel and associated sanctions when a party or person fails to make disclosures or cooperate in discovery. Here, Plaintiff seeks sanctions under Rule 37(d) and Rule 37(a). Accordingly, the undersigned examines each rule in turn.

#### A. *Sanctions are not appropriate under Rule 37(d)*

Rule 37(d) allows "[t]he court where the action is pending" to award sanctions when a party fails to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection. Clearly, Rule 37(d) is not applicable in this case for two reasons. First, this is not the court in which the action is pending, and second, BFS is not a party to the litigation. *See Pennwalt Corporation v. Durand-Wayland, Inc.,* 708 F.2d 492, 494 (9th Cir. 1983) ("Rule 37(d) … addresses only a party's failure to appear at his own deposition."); *Kamps v. Fried, Frank, Harris, Shriver & Jacobson, L.L.P.,* 274 F.R.D. 115, 118 (S.D.N.Y. 2011). Consequently, sanctions are not available to Plaintiff under Rule 37(d).[5]

Plaintiff argues in his reply memorandum that the West Virginia District Court is the only court with authority to enforce the subpoena. Accordingly, it "would be extraordinarily unjust to limit a party who has noticed a Rule 30(b)(6) deposition in this

---

[5] Plaintiff's reliance on this Court's ruling in *Robinson v. Quicken Loans, Inc.,* 2013 WL 1776100 (S.D.W.Va. Apr. 25, 2013) is misplaced. In *Robinson,* the 30(b)(6) deposition was of the defendant corporation. Accordingly, sanctions were appropriate under Rule 37(d).

8

district, for a case pending in another district, to only the remedies contained in Rule 37(a)(5)(A)." (ECF No. 8 at 9). Plaintiff fails to appreciate, however, that Rule 45 addresses the duties of a nonparty in responding to a subpoena and includes a mechanism by which the issuing court can sanction a disobedient deponent.[6] Fed.R.Civ.P. 45(e); *see, e.g., In re NCAA StudentAthlete Name & License Litig. for the N. Dist. Cal.,* No. 1:11MC63, 2012 WL 2281253, at *7 (M.D.N.C. June 18, 2012) ("The only authority for the imposition of sanctions against a nonparty for failure to comply with a subpoena is Rule 45(e)[7]."). Accordingly, Rule 45, not Rule 37(d), governs the award of sanctions in this case.

### B.     Monetary Sanctions are not appropriate under Rule 37(a)

Plaintiff argues that the court should award monetary sanctions under Rule 37(a)(4) for BFS's failure to adequately prepare its Rule 30(b)(6) designee inasmuch as it did not retrieve Ms. Rice's emails and did not instruct Ms. Enlow to review them prior to her testimony. However, Rule 37(a) does not authorize the court to award monetary sanctions for the alleged failure of a nonparty entity to adequately prepare its designee. Instead, Rule 37(a) sets out the procedure by which a party may move for an order compelling disclosure or discovery and allows only for an award of reasonable expenses incurred in bringing a successful motion to compel. Therefore, Plaintiff is not entitled under Rule 37(a) to the sanctions he requests. Furthermore, because the court does not intend to compel further response from BFS, Plaintiff is not entitled to reasonable expenses for bringing this motion.

---

[6] The undersigned does not suggest that Plaintiff has grounds to move for contempt proceedings under Rule 45(e). Indeed, to prevail on such a motion, the burden on the moving party is heavy. *See, e.g., U.S.S.E.C. v. Hyatt,* 621 F.3d 687, 693-95 (7th Cir. 2010)

[7] Rule 45(e) has been amended and is now designated as Rule 45(g).

### C. Plaintiff's Motion to Compel Under Rule 37(a)

Plaintiff also seeks an order compelling BFS to retrieve Ms. Rice's emails for every third month between January 1, 2007 and November 16, 2009; to search the restored emails for messages concerning delinquent travel card accounts; and to supply the email messages to Ms. Enlow for a reconvened deposition. Federal Rule of Civil Procedure 37(a) authorizes the court to issue an order compelling a deponent to answer a question under Rule 30 or 31. Plaintiff does not specify a particular question that Ms. Enlow failed to answer; rather, Plaintiff takes the position that Ms. Enlow's responses were incomplete as she failed to adequately prepare for her deposition. Consequently, her responses "must be treated as a failure to disclose, answer, or respond" under Rule 37(a)(4).

Federal law is clear that service of a valid Rule 30(b)(6) deposition notice on a business entity triggers its duty to designate and prepare a witness or witnesses "so that they may give knowledgeable and binding answers for the corporation … Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Taylor,* 166 F.R.D. at 361; *see also Anderson v. Discovery Communications, LLC*, 814 F.Supp.2d 562, 568 (D.Md. 2011). Nonetheless, "[t]here is no obligation to produce witnesses who know every single fact, only those that are relevant and material to the incident or incidents that underlie the suit." *Wilson v. Lakner,* 228 F.R.D. 524, 529 (D.Md. 2005). Thus, contrary to Plaintiff's contention that this Court "cannot and should not" determine "the relevance of evidence in another lawsuit in another district," the undersigned must establish the relevance of Ms. Rice's email account in order to assess the validity of Plaintiff's motion to compel additional discovery. *Lynn v. Monarch*

*Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D.Md. 2012) ("[C]entral to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery."). Indeed, if the emails in the account are not relevant to any party's claims or defenses, then BFS certainly is not required to retrieve, restore and examine them, or prepare Ms. Enlow to discuss them at deposition.

The federal discovery rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Relevancy in discovery is broad in scope, "such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner,* 272 F.R.D.431, 433 (D.Md. 2010). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Generally, the burden is on the party resisting discovery to support an objection based on lack of relevancy. *United Oil Co., Inc. v. Parts Associates, Inc.,* 227 F.R.D. 404, 411 (D.Md. 2005). Here, emails concerning past-due travel card accounts of Defendant's employees are relevant to the issue of pretext. However, Magistrate Judge Watanabe found that emails generated by Robyn Rice in her personal account were not relevant because Plaintiff could not demonstrate that any decision maker in his case was aware before March 2009 of a "comparator." (ECF No. 7-2 at 7). The record before this court supports that conclusion. The undisputed evidence is that between January 2007 and February 2009, only two delinquency reports were sent by BFS to Defendant and both apparently were received in March 2009. (ECF No. 7-2 at 134). Moreover, the individuals who terminated Plaintiff's employment in November 2009 were unaware of any delinquency reports before those sent in March 2009. (ECF No. 7 at 13). That being the case, it is logical to

11

conclude, as did Magistrate Judge Watanabe, that the emails in Ms. Rice's personal email account were not ***reasonably*** calculated to lead to the discovery of admissible evidence. Moreover, the record further establishes that once Defendant became aware of the past-due travel card accounts and received the spreadsheet from BFS, it contacted Ms. Rice to verify if delinquency reports had been sent in prior cases of past-due accounts. Ms. Rice confirmed on July 23, 2009 that the only two reports sent to Defendant since January 2007 were the ones sent in March 2009. (ECF No. 7-2 at 141-44). In order for Ms. Rice to have made this statement, she certainly must have thoroughly reviewed her own email account. Given that she was the BFS employee responsible for promptly notifying Defendant of past-due accounts, Ms. Rice would have had incentive to scour her emails for proof that she had fulfilled her job responsibilities.

Even if Ms. Rice's personal email account is deemed relevant, granting Plaintiff's motion to compel is still inappropriate. Federal Rule of Civil Procedure 26(b)(2)(C) requires a court to limit the frequency or extent of proposed discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); *See also Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D.Md.2010) ("all permissible discovery must be measured against the yardstick of proportionality"). The court enjoys substantial discretion in granting or

denying a motion to compel discovery responses. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.,* Inc., 43 F.3d 922, 929 (4th Cir.1995).

Thus, if the court assumes that Ms. Rice's pre-March 2009 emails are relevant, the court must still examine the need for the discovery under a proportionality analysis. When doing so, the undersigned finds that Plaintiff's desire to conduct the requested discovery is outweighed by the considerations set forth in Rule 26(c)(2)(C)(i)-(iii). First, any emails found in Ms. Rice's account regarding delinquency reports are likely to be duplicative of the records provided by Defendant and Citibank. Defendant and Citibank previously produced all of their documents pertaining to the Defendant's government travel card program, including the spreadsheet prepared by BFS. (ECF No. 7-2 at 136-39). In addition, Plaintiff appealed his termination to the Merit Systems Protection Board, which conducted administrative proceedings. Plaintiff was able to accumulate a substantial amount of information regarding Defendant's knowledge and treatment of comparators during that process. Second, Plaintiff has had ample opportunity to conduct discovery on the issue of pretext during the two years that his civil action has been pending in Colorado. Yet, Plaintiff has supplied the court with nothing more than unsupported speculation to justify his need for Ms. Rice's email account. Finally, although BFS has not argued to this court the burden and expense of retrieving, restoring, and reviewing the retired email account, the likelihood of Plaintiff uncovering any new and useful information in the Rice emails is slim; accordingly, the burden and expense of collecting them plainly outweigh the expected benefit of the discovery. In summary, Plaintiff asks this court to compel nonparty BFS to expend time and resources on the off-chance that "Defendant is lying when it claims that it did not receive any such reports prior to March 4, 2009." (ECF No. 5 at 6). In light of the evidence uncovered to

date, the undersigned finds that compelling discovery for that purpose simply is not justified. Therefore, Plaintiff's motion for sanctions is **DENIED**.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** November 19, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge